**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**CENTRAL DIVISION**

**CAPITAL CASE**

**UNITED STATES OF AMERICA**                                          **PLAINTIFF**

**v.**                        **Case No. 4:97-cr-00243-02 KGB**

**DANIEL LEWIS LEE**                                          **DEFENDANT**

<u>**OPINION AND ORDER**</u>

Before the Court is a motion for relief from judgment or order pursuant to Federal Rule of Civil Procedure 60 filed by defendant Daniel Lewis Lee (Dkt. No. 1363). The government responded in opposition to the motion (Dkt. No. 1367). Mr. Lee replied (Dkt. No. 1374). For the following reasons, the Court denies the motion (Dkt. No. 1363).

**I.**        **Overview**

Mr. Lee is a federal death row inmate. In a 1999 trial over which the Honorable G. Thomas Eisele presided, Mr. Lee and co-defendant, Chevie Kehoe, were convicted of conspiring to violate and violating the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(c)-(d), and of three murders in aid of racketeering in violation of 18 U.S.C. § 1959(a)(2) (Dkt. No. 810). The victims were William Mueller, Nancy Mueller, and Nancy Mueller's minor daughter Sarah Powell. During the penalty phase, the jury first decided that Mr. Chevie Kehoe should be sentenced to life imprisonment and then, separately, that Mr. Lee should be sentenced to death (Minutes: Jury Trial May 10, 1999 (Chevie Kehoe); Dkt. Nos. 807, 816 (Danny Lee)). The Eighth Circuit affirmed Mr. Lee's conviction and death sentence. *United States v. Lee*, 374 F.3d 637 (8th Cir. 2004), *cert. denied*, 545 U.S. 1141 (2005). Before filing his current motion, Mr. Lee has

raised, and courts including this Court have examined, several challenges to his conviction and sentence.

In his current motion, Mr. Lee argues that he is entitled to set aside the prior 28 U.S.C. § 2255 Order (Dkt. No. 1163), pursuant to Federal Rule of Civil Procedure 60.  Mr. Lee contends that, during the § 2255 proceedings, the government engaged in misconduct and made misrepresentations by failing to disclose two pieces of evidence:  (1) the results from a polygraph test administered early in the investigation to a third-party suspect, Paul Humphrey; and (2) the mental instability of government witness, Gloria Kehoe, mother of co-defendant Mr. Chevie Kehoe.  In support of his current motion, Mr. Lee asserts that he made a direct request for the new evidence.  Mr. Lee argues that the government's alleged misconduct and misrepresentations prevented him from raising § 2255 claims based on these two pieces of evidence that his convictions were obtained in violation of *Brady v. Maryland*, 373 U.S. 83 (1963), *Napue v. Illinois*, 360 U.S. 264 (1959), and *Giglio v. United States*, 405 U.S. 150 (1972) (Dkt. No. 1363, at 1, 38-64).  Further, Mr. Lee contends for the first time in his reply that the government's failure to disclose this evidence also affected the Court's adjudication of two raised ineffective assistance of counsel claims (Dkt. No. 1374, at 18-20).

The Court acknowledges that a threshold question in resolving the pending motion is whether Mr. Lee's current motion, although titled a Rule 60 motion, is in fact a successive § 2255 motion within the meaning of 28 U.S.C. § 2255(h)—which would subject his current motion to the requirement of prior authorization by the Court of Appeals for the Eighth Circuit.  28 U.S.C. § 2255(h); 28 U.S.C. § 2244(b)(3)(A).  This Court concludes that, if it is, Mr. Lee has not properly obtained authorization from the Eighth Circuit to file a successive § 2255 motion and that, regardless, Mr. Lee is not entitled to the relief he seeks under Federal Rule of Civil Procedure 60.

2

For these reasons, the Court denies Mr. Lee's motion and denies the relief he seeks (Dkt. No. 1363).

## II.     Analysis

### A.     Evidence And Alleged Conduct

Two pieces of evidence are at issue in Mr. Lee's current motion.  To support his motion, Mr. Lee attaches the polygraph questions and examiner's opinion from a test administered to Mr. Humphrey in January 1997 by the Arkansas State Police.   According to those papers, Mr. Humphrey's physiological responses indicated that Mr. Humphrey was untruthful in answering questions about his involvement in the Mueller murders, the murders for which Mr. Chevie Kehoe and Mr. Lee were convicted.  The examiner's opinion was that Mr. Humphrey was involved in the Muellers' deaths (Dkt. No. 1363-2).  Mr. Lee maintains that he obtained the polygraph evidence from the Arkansas State Police through an Arkansas Freedom of Information Act request.

Mr. Lee states that, after Mr. Humphrey failed the polygraph exam administered by the Arkansas State Police, the government "took over the investigation of the case from local authorities," "hid[] this report from the defense," permitted Mr. Humphrey to testify that he was not involved in the crimes, and told the jury during closing argument that its investigation did not reveal any evidence connecting Mr. Humphrey to the murders (Dkt. No. 1363, at 6, 15, 49, 50). Mr. Lee refers to the trial transcript (*Id.*, at 15, 50).

Mr. Lee points out that, at trial, defense lawyers asked Mr. Humphrey why he had the Muellers' forged vehicle titles and about his familiarity as a skin diver with Lake Dardanelle, where the Muellers' bodies were discovered (Trial Tr. 6169, 6174-76, 6191-92, 6201).  Mr. Humphrey testified that he and William Mueller had a plan to exchange vehicle titles to take their vehicles "from the state out of its hands" (Trial Tr. 6154-62).  Mr. Humphrey said that, after the

Muellers' disappearance, he convinced their landlord to send him their titles (Trial Tr. 5717, 6153-55, 6161-62, 6176).  On cross-examination, Mr. Humphrey responded that he was not involved in the Muellers' deaths (Trial Tr. 6204).  The government argued in closing that "[t]here's no evidence against Mr. Humphrey." (Trial Tr. 6959-60).

Also in support of his motion, Mr. Lee argues that the government concealed evidence related to Ms. Gloria Kehoe's mental instability.  Mr. Lee maintains that Ms. Gloria Kehoe's son and husband repeatedly told federal case agents about her condition and that this evidence would have "destroyed her credibility." (Dkt. No. 1363, at 6).  As to the government's alleged awareness of Ms. Gloria Kehoe's mental instability, Mr. Lee attaches affidavits from two of her family members, dated November 1 and 3, 2019.  Ms. Gloria Kehoe's son, Cheyne Kehoe, attests that he told federal agents before trial that Ms. Gloria Kehoe was "unstable," "paranoid," and "sees and hears things that aren't there, so much so that my dad took her for psychiatric treatment." (Dkt. No. 1363-3, at 9).  Ms. Gloria Kehoe's husband, Kirby Kehoe, attests that he told federal agents before trial that Ms. Gloria Kehoe "sometimes had panic attacks and sometimes she had what she called dreams where she saw things happening to us, like seeing people (sometimes government agents) assaulting her." (Dkt. No. 1363-4, at 5).

In further support of his motion, Mr. Lee refers to the trial court's denial of a trial motion to compel Ms. Gloria Kehoe to undergo a psychiatric examination, filed by Mr. Chevie Kehoe's lawyer, and a bench conference during Ms. Gloria Kehoe's testimony where Mr. Chevie Kehoe's lawyer asked if there was any outstanding material the government had not provided (Dkt. No. 1363, at 13).  Mr. Lee argues that evidence of Ms. Gloria Kehoe's mental condition was particularly significant because she was a key witness who testified that Mr. Lee confessed to her regarding his involvement in the murders.

To understand whether, and if so how, this evidence and related allegations have been addressed previously in this matter, the Court examines this case's relevant procedural history.

### B.      Relevant Procedural History

In a previous motion, Mr. Lee made similar arguments based on two other pieces of evidence (Dkt. No. 1297).  When ruling on that prior motion, Judge J. Leon Holmes denied relief pursuant to Rule 60(b)(3) and (d)(3) (Dkt. No. 1313).[1]  Judge Holmes examined the prior procedural history of Mr. Lee's case to that point, and the Court does not repeat that history here (*Id.*, at 2-5).  Instead, the Court focuses on prior treatment of the evidence or issues related to the two pieces of evidence upon which Mr. Lee bases his current challenge.

In 2006, Mr. Lee filed his first motion to vacate his conviction and sentence under 28 U.S.C. § 2255 (Dkt. No. 1118).  Judge Eisele denied the post-conviction motion without a hearing (Dkt. No. 1163).  *United States v. Lee*, No. 4:97-CR-00243-(2) GTE, 2008 WL 4079315 (E.D. Ark. 2008).  Relevant here, Mr. Lee, as part of an actual-innocence argument, listed "disturbing" issues raising "new questions." (Dkt. No. 1118, at 6).  He included in that list a general, unsupported *Brady* allegation:  "Newly-discovered evidence, or evidence withheld in violation of the government's *Brady* obligations, that others carried out the murders of the Mueller family." (*Id.*, at 7).

Mr. Lee added this footnote:

> With regard to the Government's constitutional *Brady* obligations, Movant's counsel requests that the Government review its files and the files of its investigating agencies for any information favorable to the defense bearing on guilt or punishment, including—but not limited to—any evidence that other members of white supremacist or Christian Identity groups, or other like groups, were responsible for the murders of the Mueller family or otherwise played a role in the crimes charged in, or related to, this case.  Should additional *Brady* evidence be

---

[1]  Judge G. Thomas Eisele presided over this case when the indictment was handed down in 1997 (Dkt. No. 1).  In 2012, the case was reassigned to Judge J. Leon Holmes (Dkt. No. 1212). In 2019, the case was reassigned to the undersigned (Dkt. Nos. 1325; 1326).

> discovered, Movant will amend the petition and seek relief appropriate to the nature
> of the material newly-disclosed or uncovered.

(*Id.*, at 7 n.3 (internal citations omitted)).

The government did not respond to the *Brady* footnote.  The government responded to Mr. Lee's actual-innocence argument by noting his § 2255 motion consisted of "barebones claim allegations without discussion of supporting legal principles or, for that matter, much factual context."  (Dkt. No. 1126, at 26 n.13).  The government argued that, even if a freestanding claim of actual innocence was recognized, the guilt evidence was overwhelming and that Mr. Lee failed to cast doubt on his conviction (*Id.*, at 30).  Judge Eisele did not specifically address Mr. Lee's actual-innocence arguments or general *Brady* allegation.  He did track the evidence supporting the conviction and found that the jury's guilty verdict was "well-founded." (Dkt. No. 1163, at 5-18).  *Lee*, 2008 WL 4079315, at *2-7.

In an ineffective assistance of counsel claim also potentially relevant to the pending motion, Mr. Lee argued that his trial lawyers should have objected to the government's pretrial motion seeking to bar him from access to discovery (Dkt. No. 1118, at 18-19).  The government responded that Mr. Lee "distort[ed] what occurred at trial." (Dkt. No. 1126, at 45).  The government explained that it turned over a "huge amount of 'discovery' materials" before trial, and Mr. Lee "sent copies of [some] material to his associates in an effort to have witnesses harmed." (*Id.*, at 45, 45 n.16).  The government maintained that "[t]he vast majority of the material [was] *Jencks* material" and only a "small amount of the material was Rule 16 discovery and *Brady* material." (*Id.*, at 45 n. 16).  The government challenged the ineffectiveness claim on the ground that, because "[a]s practically all the materials were *Jencks* materials, had Lee's trial attorney objected to any limitations on providing Lee copies, the government could have provided *Jencks* material at the time the statute directs, *i.e.*, after the witness completed his direct examination,"

and "[t]his would have crippled the ability of defense attorneys to timely prepare for trial." (*Id.*, at 45). Judge Eisele denied the ineffectiveness claim, finding that there was no dispute that Mr. Lee used the *Jencks* materials in a threatening manner and that, if Mr. Lee's lawyers had objected, the government would have stopped providing the *Jencks* materials in advance (Dkt. No. 1163, at 43-45). *Lee*, 2008 WL 4079315, at *21-22.

Also in Mr. Lee's § 2255 motion, he raised two other possibly relevant ineffective assistance of counsel claims: (1) trial lawyers failed to call witnesses in support of a third-party culpability defense, including three individuals who Mr. Lee maintains could have testified about Mr. Humphrey's possible involvement in the murders: (a) David Hill, who Mr. Lee contends would have testified that he saw Mr. Humphrey and another man throwing something off the bridge over the Illinois Bayou, where the Muellers' bodies were found; (b) Glen Hinson, who Mr. Lee argues would have testified that, after Mr. Humphrey obtained the Muellers' vehicle title, he was nervous and scared and that Nancy Mueller was frightened of Mr. Humphrey; and (c) Eldon King, who Mr. Lee represents would have testified that Mr. Humphrey began acting strangely after the Muellers disappeared (Dkt. No. 1118, at 15); and (2) trial lawyers were remiss in not asking Ms. Gloria Kehoe on cross-examination about her interview statement that Mr. Chevie Kehoe told her that he and Mr. Lee had remained in Arkansas after the murder, given that Mr. Lee asserts that, if Mr. Chevie Kehoe and he had stayed over in Arkansas, they could not have returned to Washington per the timeline proposed by the government (*Id.*, at 13).

The government responded to Mr. Lee's claims by arguing that Ms. Gloria Kehoe did not make any statement about Mr. Chevie Kehoe and Mr. Lee remaining in Arkansas (Dkt. No. 1126, at 37). The government argued that Mr. Lee's lawyer was aware of Mr. Hill's potential testimony and made a reasonable decision that testimony would not be helpful. The government also argued

that Mr. Hinson's testimony would not have benefitted Mr. Lee, given the jury's opportunity to consider Mr. Humphrey's testimony.  The government also argued that Nancy Mueller's alleged statement about being fearful of Mr. Humphrey was inadmissible.  Further, the government argued that Mr. King's testimony would have been that Mr. Humphrey "began acting strangely long before the Muellers disappeared," and that Mr. Lee "fail[ed] to explain how this evidence could possibly have benefitted him" (*Id.*, at 38-39).

The Court determined that the trial lawyers' decision not to call Mr. Hill as a witness was a "legitimate trial strategy" and that "there [wa]s no indication that such testimony would have altered the outcome of the trial." (Dkt. No. 1163, at 26).  *Lee*, 2008 WL 4079315, at *12.  The Court found that the ineffectiveness claim stemming from the failure to call Mr. Hinson and Mr. King as witnesses did not satisfy *Strickland* performance or prejudice.  "Petitioner's trial counsel attempted, but failed, to establish a link between Humphrey and the death of the Muellers. Humphrey was questioned in detail about the circumstances under which he acquired the title to William Mueller's vehicle and the fact that he attempted to have the title transferred to himself." (Dkt. No. 1163, at 26-27).  *Lee*, 2008 WL 4079315, at *12.

To determine what Ms. Gloria Kehoe said in the pretrial interview about Mr. Chevie Kehoe and Mr. Lee staying in Arkansas, the Court ordered the defendants to produce a transcript of the interview (Dkt. No. 1154).  The Court quoted the interview excerpt in the Order (Dkt. No. 1163, at 37).  Ms. Gloria Kehoe stated that Mr. Chevie Kehoe told her that, after murdering the Muellers, he and Mr. Lee "rode around" to see "how the media would handle it." (*Id.*).  When pressed, Ms. Gloria Kehoe was less sure:  "That's why I'm, that's what I believe he said," and "I'm not sure if it was that area or the outside of that area.  I can't be quoted on that." (*Id.*).  Then, she testified:

> AD (Deputy Sheriff):  Did he tell you where he and Danny went right after they disposed of the bodies?  Where did they go?

GK:  You know, I was in shock by then.

AD:  Mm mh (Affirmative).

GK:  I'll be very honest with you.  I believe they just headed straight back to Spokane.  I just remember him saying that they hung around for a few days.  That could have been at Danny's mother's house [in Oklahoma] and then they came back to Spokane.

(*Id.* at 38).

The Court determined:

The Government replies that Gloria[2] was momentarily confused about the Spokane City Hall bombing and the Mueller murders, and that the follow-up questions establish that she was aware of this confusion.  Additionally, she made it clear that she was unsure about Kehoe's remarks, and ultimately stated that she believed "they just headed straight back to Spokane."  Thus, it appears to the Court that even if trial counsel had questioned Gloria about the statement, she would have been easily rehabilitated by the Government.

Finally, even if it could be said that counsel's cross-examination of Gloria was constitutionally deficient, Petitioner suffered no prejudice because it would not have altered the result.  Defense counsel effectively used what they had to work with in an effort to create reasonable doubt.  They were, of course, limited by the facts.  Admittedly, Gloria was an important Government witness.  She was a difficult witness to cross-examine because of the fact that she testified convincingly, consistently with her prior statements, and against her own son [Chevie Kehoe].

(*Id.*).

Judge Eisele also denied Mr. Lee's Federal Rule of Civil Procedure 59(e) motion.  *United States v. Lee*, 2010 WL 5347174 (E.D. Ark. 2010).  The Eighth Circuit affirmed the denial of the § 2255 petition and the denial of the Rule 59(e) motion.  *United States v. Lee*, 715 F.3d 215 (8th Cir. 2013).

---

[2]  The Court recognizes that the government alleged in the § 2255 responsive brief that Mr. Chevie Kehoe and Mr. Lee told Ms. Gloria Kehoe that they lingered after bombing the Spokane City Hall, not after murdering the Muellers; the government's argument therefore was that Mr. Lee, not Ms. Gloria Kehoe, was confusing the Spokane City Hall incident with the Mueller murders (Dkt. No. 1126, at 37).

In September 2018, Mr. Lee filed a motion to vacate his conviction and sentence under §
2255, or, in the alternative, for relief under Federal Rule of Civil Procedure 60 (Dkt. No. 1297).
In this § 2255 motion, Mr. Lee first argued that newly discovered evidence demonstrated *Brady*
and *Napue-Giglio* violations at trial.  Government witness James Wanker testified during the guilt
phase that Mr. Lee confessed to him that Mr. Lee committed the murders.  Mr. Lee argued that his
conviction should be vacated because new evidence demonstrated that Mr. Wanker told the
government before trial that he did not believe Mr. Lee's confession.  The government introduced
penalty-phase evidence that Mr. Lee was convicted of robbery; the government also argued that
Mr. Lee committed murder in connection with the robbery but that Oklahoma prosecutors gave
him a "gift" by not charging him with murder.  Mr. Lee argued that his sentence should be vacated
because the government suppressed an Oklahoma state-court document reflecting that Mr. Lee
was not charged with murder due to a lack of evidence.  Judge Holmes determined the *Brady* and
*Napue-Giglio* claims constituted a second or successive habeas application requiring authorization
from the Eighth Circuit.

Mr. Lee alternatively asked the Court to consider his application pursuant to Rule 60 and
to reopen his § 2255 proceedings, arguing that the government violated its duties under *Brady* and
*Napue-Giglio* to disclose that same evidence during those proceedings.  Mr. Lee argued that the
government made misrepresentations in its habeas responsive brief.  Judge  Holmes found that,
"[a]ssuming that Lee ha[d] properly asserted a Rule 60 motion as opposed to a second or successive
habeas petition, he [wa]s not entitled to relief under either Rule 60(b)(3) or (d)(3)." (Dkt. No. 1313,
at 18).  Relevant here, the Court considered Mr. Lee's arguments that:  (1) the government made
a misrepresentation in Footnote 16 of the government's § 2255 responsive brief by stating "[a]
huge amount of 'discovery' materials were provided" (*Id.*, at 17-18 (quoting Dkt. No. 1126, at 45

n.16)); and (2) the general *Brady* allegation in the § 2255 petition would have been viable if the government had disclosed supporting material.

In his analysis, Judge Holmes recognized that Footnote 16 was not a response to a discovery request:

> Lee refers to Footnote 16 as being part of the Government's response to his general, unsupported *Brady* allegation.  Document #1118 at 7.  Footnote 16, however, was in the response to Lee's ineffectiveness claim challenging his trial lawyers' failure to oppose the Government's motion seeking restrictions on his personal discovery access. Document #1126 at 45, n. 16.

(Dkt. No. 1313, at 18 n.5).

Judge Holmes determined that Mr. Lee's request for relief under Rule 60(b)(3) was untimely and, alternatively, that Mr. Lee had not demonstrated the "exceptional circumstances" required for Rule 60 relief (*Id.*, at 18-19 (citing *Atkinson v. Prudential Prop. Co., Inc.,* 43 F.3d 367, 371 (8th Cir. 1994)).   Specifically, Judge Holmes explained that:

> For Rule 60(b)(3) relief, Lee must show by clear and convincing evidence that the Government "engaged in fraud or other misconduct and that this conduct prevented [him] from fully and fairly presenting his case."  *Cook v. City of Bella Villa,* 582 F.3d 840, 855 (8th Cir. 2009) (quotations omitted).  Lee has not met this burden. While failure to produce evidence requested in discovery may under some circumstances be grounds for vacating a judgment, the moving party must show that the failure was due to misconduct by the party that should have produced the evidence.  *Atkinson*, 43 F.3d at 373.  Lee has not alleged facts to show that the omission of any evidence during his § 2255 proceeding was due to the Government's misconduct or that the Government intentionally misrepresented any facts.  Nor has he demonstrated that any failure to disclose Wanker's opinions or the Oklahoma judicial finding prevented him from fully and fairly litigating his initial § 2255 claim.   "This is not a case in which [the Government] withheld information that they alone possessed."  *Id.*  Lee could have interviewed Wanker before filing his first habeas petition; and the Oklahoma court record upon which he now relies is public information.

(Dkt. No. 1313, at 19).

Judge Holmes also found that Mr. Lee's allegations did not meet the standard for fraud on the court under Rule 60(d)(3), determining that:

Fraud on the court is narrowly defined as "fraud which is directed to the judicial machinery itself and is not fraud between the parties or fraudulent documents, false statements or perjury." *Superior Seafoods, Inc. v. Tyson Foods, Inc.*, 620 F.3d 873, 878 (8th Cir. 2010) (quoting *United States v. Smiley*, 553 F.3d 1137, 1144–45 (8th Cir. 2009) (quotations omitted)). "A finding of fraud on the court is justified only by the most egregious misconduct directed to the court itself, such as bribery of a judge or jury or fabrication of evidence by counsel." *Greiner v. City of Champlin*, 152 F.3d 787, 789 (8th Cir. 1998) (quotations omitted). "[I]t is necessary to show a deliberately planned scheme designed to improperly influence the court in its decision." *Heim v. Comm'r of Internal Revenue*, 872 F.2d 245, 249 (8th Cir. 1989). Lee's allegations do not clear this high bar. *See Tyler v. Purkett*, 413 F.3d 696, 700–01 n.7 (8th Cir. 2005) ("Claims that a party did not disclose to a court certain facts allegedly pertinent to the matter before it, however, do not normally constitute fraud on the court.").

(Dkt. No. 1313, at 19-20).

Judge Holmes denied a certificate of appealability. The Eighth Circuit also denied Mr. Lee's application for a certificate (Dkt. No. 1351). *Lee v. United States*, No. 19-2432 (8th Cir. Nov. 4, 2019).[3] Mr. Lee's execution currently is set for July 13, 2020.

---

[3] With respect to the procedural history of Mr. Lee's case, the Court also recognizes that, in July 2019, Mr. Lee's execution was scheduled for December 9, 2019. In September 2019, Mr. Lee filed a habeas petition under 28 U.S.C. § 2241—based on claimed new evidence related to the Oklahoma murder charge—in the Southern District of Indiana, where Mr. Lee is confined. That district court stayed Mr. Lee's execution to allow time to consider the petition. The Seventh Circuit vacated the stay. *Lee v. T.J. Watson*, No. 19-3399 (7th Cir. 2019). The district court thereafter denied the habeas petition, finding that Mr. Lee's claims were barred by the Savings Clause, 28 U.S.C. § 2255(e). *Lee v. Warden USP Terre Haute et al*, No. 2:19-cv-468, 2020 WL 1317449 (S.D. Ind. Mar. 20, 2020).

Mr. Lee filed in the Eastern District of Arkansas a motion for relief from the Order denying his Federal Rule of Civil Procedure 59(e) motion (Dkt. No. 1189) and a motion to stay his execution (Dkt. Nos. 1352, 1353). He argued that his Rule 59(e) motion should not have been characterized as a second or successive habeas petition requiring authorization from the Circuit. This Court granted the stay (Dkt. No. 1356). The Eighth Circuit vacated the stay on June 1, 2020. *United States v. Lee*, No. 19-3618 (8th Cir. June 1, 2020). Mr. Lee's motion for relief from judgment remains pending and will be addressed by this Court in a separate Order (Dkt. No. 1352).

On December 4, 2019, Mr. Lee filed an original proceeding in the Eighth Circuit, seeking permission to file a successive habeas petition. He alleged a *Brady* violation claiming that witnesses told law enforcement officers during the investigation of the case that there was no "enterprise," an element of the federal crime for which Mr. Chevie Kehoe and Mr. Lee were convicted. The Eighth Circuit summarily denied the motion. *Lee v. United States*, No. 19-3576 (8th Cir. Jan. 7, 2020). Mr. Lee also has or had legal proceedings pending in the District of Columbia regarding the method of execution, *see In re Fed. Bureau of Prisons' Execution Protocol*

### C.      Successive § 2255 Motion

The Court acknowledges that a preliminary issue is whether Mr. Lee's current Rule 60 motion is a second or successive § 2255 petition requiring authorization from the Eighth Circuit. 28 U.S.C. § 2255(h); 28 U.S.C. § 2244(b)(3)(A).  Mr. Lee's motion must be treated as a second or successive habeas petition if it advances a claim for relief.  *Gonzales v. Crosby*, 545 U.S. 524, 530-32 (2005).  A motion raises a "claim" when it "seeks to add a new ground for relief" or "attacks the federal court's previous resolution of the claim *on the merits*." *Id.* at 532 (emphasis in original).  A motion, however, is properly brought under Rule 60 when it "attacks, not the substance of the federal court's resolution of a claim on the merits, but some defect in the integrity of the federal habeas proceedings." *Id.* (footnote omitted).

This Court concludes that, if Mr. Lee's current motion is considered a successive § 2255 motion, Mr. Lee has not properly obtained authorization from the Eighth Circuit to file a successive § 2255 motion and that, regardless, for reasons explained in this Order Mr. Lee is not entitled to the relief he seeks under Federal Rule of Civil Procedure 60.

### D.      Rule 60 Claims

To set aside the prior § 2255 Order, Mr. Lee must demonstrate:  (1) that his motion is attacking the § 2255 proceeding, not raising a *Brady* or *Napue-Giglio* claim, and (2) that reopening the § 2255 proceeding is warranted based on Rule 60 requirements.

### 1.      Allegations Of Misconduct Or Misrepresentation

In support of his current motion, Mr. Lee alleges misconduct or misrepresentation in the § 2255 proceedings.  The Court examines his allegations.

---

*Cases*, No. 19-5322 (D.C. Cir. Apr. 7, 2020), and the adequacy of his clemency proceedings, *see Lee v. Barr*, No. 1:19-cv-3611 (D.D.C.).

Relying on Footnote 3 in his § 2255 motion, Mr. Lee argues that he made a "formal request" during his § 2255 proceedings that the government turn over any *Brady* material.  He points to the general *Brady* allegation in his "Case for Actual Innocence" and the footnote statement that he reserved the right to amend his motion with more specific *Brady* claims based on any information the government produced.  Mr. Lee argues that, based on that "demand" in Footnote 3, the government was obligated to disclose evidence of Mr. Humphrey's polygraph test results and Ms. Gloria Kehoe's mental condition.  He contends that, if the government had done so, he would have amended his petition and that this Court could have adjudicated the related *Brady* claims (Dkt. No. 1363, at 7).  Mr. Lee also argues for the first time in his reply that, had the Government disclosed this evidence, the Court may have resolved differently two raised ineffective assistance of counsel claims.  Mr. Lee asserts that the government instead "misled" his lawyers and the Court "into believing that it had already fully complied with its *Brady* obligations at the time of trial, and it made no additional disclosures." (*Id.*).  He points to the government's Footnote 16 in response to the ineffective assistance of counsel claim related to discovery:  "The Government did not come forward with any *Brady* material but simply noted that it had previously provided a 'huge amount' of discovery to trial counsel." (*Id.*, at 16 (quoting Dkt. No. 1126, at 45 n.6)).

Mr. Lee also refers to the government's representations during Mr. Chevie Kehoe's § 2255 proceeding, which was on the same docket as Mr. Lee's.  Mr. Chevie Kehoe argued that his trial lawyers were ineffective for failing to investigate adequately third parties, including Mr. Humphrey, and that the government improperly withheld related evidence (Dkt. No. 1363, at 16-17 (citing Dkt. No. 1039, at 40 (§ 2255 petition); Dkt. No. 1067-2 at 13-14, 18-19 (Amended § 2255 petition pt. 2); Dkt. No. 1067-3 at 2 (Amended § 2255 petition, pt. 3))).  In responding to Mr.

Chevie Kehoe's ineffective assistance of counsel claim, the government stated that "[a]ll documents relating to Mr. Humphrey were provided to trial counsel." (Dkt. No. 1363, at 17 (citing Dkt. No. 1087, at 32)).  The government also stated that, "[d]espite trial counsel's best efforts, no tie was ever made between Paul Humphrey and the named individuals [who were alternate suspects] which could establish that Paul Humphrey or one of the named individuals was in fact responsible for the Mueller deaths.  In his argument Movant identifies no connection.  Even should the Court review the issue, Movant's allegations are meritless on their face." (Dkt. No. 1363, at 17 (quoting Dkt. No. 1087, at 32-33)).  In Mr. Lee's pending Rule 60 motion, he argues that "[a]ny such evidence disclosed to Mr. Kehoe could also have benefitted Mr. Lee, but the Government asserted there was none." (Dkt. No. 1363, at 17).

Mr. Lee correctly notes that the Court denied his and Mr. Chevie Kehoe's § 2255 petitions on the same day, finding in both cases that counsel had ample opportunity to question Mr. Humphrey and were unable to establish a link between Mr. Humphrey and the death of the Muellers (Dkt. No. 1374, at 18 (citing *Lee*, 2008 WL 4079315, at \*12, and *United States v. Kehoe*, No. 4:97-CR-00243(1) GTE, 2008 WL 4079316, at \*19 (E.D. Ark. Aug. 28, 2008)).

## 2.    Rule 60(b)(3)

Mr. Lee first seeks to set aside the § 2255 Order based on Rule 60(b)(3), which provides relief from judgment for "fraud . . . , misrepresentation, or misconduct by an opposing party."  Rule 60(b) provides "extraordinary relief" and "may be granted only upon an adequate showing of exceptional circumstances."  *Atkinson*, 43 F.3d at 371 (quotations omitted).  For relief pursuant to Rule 60(b)(3), Mr. Lee must demonstrate with clear and convincing evidence that the government "engaged in fraud or other misconduct and that this conduct prevented [him] from fully and fairly presenting his case."  *Cook*, 582 F.3d at 855.  "While failure to produce evidence requested in

discovery may under some circumstances be grounds for vacating judgment," Mr. Lee must submit evidence that the failure to do so was due to the government's misconduct. *Atkinson*, 43 F.3d at 373.

At the outset, the government argues that Mr. Lee's request for relief is untimely under the one-year limitations period. Federal Rule of Civil Procedure Rule 60(c)(1) requires that a Rule 60(b)(3) motion must be filed no more than a year from the order or judgment that it seeks to set aside; Judge Holmes found no authority to extend that deadline (Dkt. No. 1313, at 18-19). The parties dispute whether equitable tolling applies. Regardless of whether equitable tolling applies, for the following reasons, Mr. Lee is not entitled to relief on the merits of his Rule 60(b)(3) claim.

Mr. Lee is correct that other Circuits—including the First, Fourth, Fifth, Seventh, and Ninth Circuits—recognize an unintentional misrepresentation as a basis for Rule 60(b)(3) relief. *Scott v. United States,* 81 F. Supp. 3d 1326, 1339 (M.D. Fla. 2015), *aff'd*, 890 F.3d 1239 (11th Cir. 2018) (citing Circuit opinions). The Eleventh and Federal Circuits have held the same. *United States v. One Douglas A-26B Aircraft,* 662 F.2d 1372, 1374 n.6 (11th Cir. 1981); *Rembrandt Vision Techs., L.P. v. Johnson & Johnson Vision Care, Inc.*, 818 F.3d 1320, 1328 (Fed. Cir. 2016). The Eighth Circuit, however, requires Mr. Lee to demonstrate that any misrepresentation was intentional and that any fraud was deliberate. *Dukes v. City of Minneapolis*, 339 Fed. App'x 665, 668 (8th Cir. 2009) (per curiam); *Smith v. Clarke*, 458 F.3d 720, 724-25 (8th Cir. 2006). The Sixth Circuit agrees. *Jordan v. Paccar, Inc.*, 97 F.3d 1452, at *6-7 (6th Cir. 1996) (per curiam) (unpublished opinion).

In support of his motion, Mr. Lee cites *In re Pickard,* 681 F.3d 1201 (10th Cir. 2012); *United States v. Williams*, 753 Fed. App'x 176 (4th Cir. 2019); and *Scott*, 81 F. Supp. 3d at 1326. In each of those cases, the courts granted Rule 60(b)(3) relief after finding that the government

made false statements during § 2255 proceedings that directly impacted adjudication of a raised

claim.  Mr. Lee compares the misrepresentations in those underlying § 2255 proceedings to his

Footnote 3 "demand" for *Brady* material to support his general allegation coupled with the

government's Footnote 16 "response" and alternatively the government's silence as to his

"demand."   Mr. Lee also relies on the government's affirmative representation in Mr. Chevie

Kehoe's § 2255 proceedings that "[a]ll documents relating to Mr. Humphrey were provided to trial

counsel." (Dkt. No. 1374, at 11).

In his Rule 60(b) motion filed in September 2018 (Dkt. No. 1297), Mr. Lee argued as he

does here that the government's non-disclosure of *Brady* material created a defect in the integrity

of the § 2255 proceedings based on his general *Brady* allegation.  As discussed, Judge Holmes,

citing *Atkinson,* previously found that Mr. Lee was not entitled to Rule 60(b)(3) relief because Mr.

Lee had not "alleged facts to show that the omission of any evidence during his § 2255 proceeding

was due to the Government's misconduct or that the Government intentionally misrepresented any

facts." (Dkt. No. 1313, at 19).  Judge Holmes also found that Mr. Lee failed to demonstrate that

any failure to disclose evidence prevented him from fully and fairly litigating his claims because

the allegedly suppressed evidence was available by other means (*Id.*).

Under the doctrine of the law of the case, "when a court decides a rule of law, that decision

should govern the same issues in subsequent stages in the same case."  *Unigroup, Inc. v. Winokur*,

45 F.3d 1208, 1211 (8th Cir. 1995) (citations omitted).  The doctrine "precludes litigation of

matters that are decided implicitly, as well as those decided explicitly."  *Id.*  District court decisions

that "either have not been appealed or have been appealed and affirmed[] are the law of the case

and need not be revisited."  *Liddell by Liddell v. Bd. Of Educ. Of the City of St. Louis*, 121 F.3d

1201, 1216 (8th Cir. 1997).  Mr. Lee argues that the same factual and legal issues were not before

the Court in the prior proceeding; the Court rejects his argument with respect to two issues relevant to resolving his currently pending motion.

This Court determines that the law of the case sets out the legal framework for this Court's review of Mr. Lee's argument under Rule 60(b)(3) regarding, at a minimum, two issues relevant to Mr. Lee's current pending motion:  (1) the government's Footnote 16 was not in response to Mr. Lee's general *Brady* allegation, and (2) for Rule 60(b)(3) relief, Mr. Lee must allege facts demonstrating that the government engaged in misconduct or intentional misrepresentation of the facts (Dkt. No. 1313, at 18 n.5, 19).  Applying this legal framework, the Court determines that Mr. Lee is not entitled to relief pursuant to Rule 60(b)(3).  Mr. Lee does not allege facts demonstrating that the government engaged in misconduct or intentionally misrepresented facts during his § 2255 proceedings related to Mr. Humphrey's polygraph test or Ms. Gloria Kehoe's mental health.

The Court acknowledges that Mr. Lee argues that whether the "prosecution" possessed the new evidence remains a factual determination that could be decided at a hearing.  He notes that, in *Atkinson,* the respondents submitted unrebutted affidavits that they did not possess the undisclosed evidence and were not aware of its existence.  Here, the government did not make any representations in Mr. Lee's § 2255 proceedings related to the purportedly new evidence; Mr. Lee does not offer any evidence that the omission of any evidence was due to the government's misconduct or that the government intentionally misrepresented any facts.  Also, the Court determines that the alleged omission of any evidence did not prevent Mr. Lee from fully and fairly litigating his § 2255 petition.

Mr. Lee argues for the first time in his reply that the government's withholding of evidence also affected adjudication of his ineffective assistance of counsel clam, alleging a failure to call available witnesses in support of the third-party culpability defense.  Mr. Lee argues the denial of

this ineffective assistance of counsel claim was based on the government's misrepresentation in Mr. Chevie Kehoe's § 2255 case that no materials concerning Mr. Humphrey had been withheld and on the non-disclosure of the polygraph report.  Mr. Lee points to the Court's finding in his § 2255 proceeding that no evidence established a "link" between Mr. Humphrey and the murders (Dkt. No. 1374, at 18-19).  Mr. Lee's arguments on this point fail under the law of the case and Eighth Circuit precedent; Mr. Lee does not offer any evidence that the government engaged in misconduct or made intentional misrepresentations in his § 2255 proceeding.

Mr. Lee also argues for the first time in his reply that new evidence of Ms. Gloria Kehoe's mental condition would have altered the Court's evaluation of another § 2255 ineffective assistance of counsel claim:  trial counsel failed to ask Ms. Gloria Kehoe on cross-examination about her statement that Mr. Chevie Kehoe and Mr. Lee lingered in Arkansas after the Mueller murders (Dkt. No. 1374, at 19-20).  Mr. Lee's arguments fail under the law of the case and Eighth Circuit precedent; he does not demonstrate that the government engaged in any misconduct or made intentional misrepresentations in his § 2255 proceeding.  Further, in the § 2255 proceeding, the Court found that Mr. Lee's lawyers were not ineffective partly because, even if they had explored this point, the government could have "rehabilitated" Ms. Gloria Kehoe on re-direct examination by, in part, highlighting Ms. Gloria Kehoe's confusion about whether Mr. Chevie Kehoe and Mr. Lee lingered in Arkansas.

For these reasons, the Court determines Mr. Lee is not entitled to relief under Rule 60(b)(3).

### 3.    Rule 60(b)(6)

Mr. Lee also contends that relief is warranted pursuant to Rule 60(b)(6), which permits a court to reopen a judgment for "any other reason that justifies relief."  Fed. R. Civ. P. 60(b)(6).  "Extraordinary circumstances" are required for relief pursuant to this "catchall category," and

"[s]uch circumstances will rarely occur in the habeas context." *Buck v. Davis*, 137 S. Ct. 759, 772 (2017) (quotations and citation omitted).  To determine whether the requisite circumstances exist, a court may consider a wide range of factors, including, "in an appropriate case, 'the risk of injustice to the parties' and 'the risk of undermining the public's confidence in the judicial process.'"  *Id.*  (quoting *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 863-64 (1988)).  Mr. Lee contends that justice requires reopening the § 2255 Order because his *Brady* claims were never examined due to the government's alleged misconduct.  Mr. Lee argues that the continued concealment of evidence constitutes "extraordinary circumstances."

Again, the government challenges the timeliness of Mr. Lee's seeking relief pursuant to Rule 60(b)(6) and whether Rule 60(b)(6) relief is available maintaining that Mr. Lee's motion is in effect a Rule 60(b)(3) motion.  This Court concludes, based on the analysis in this Order, that Mr. Lee has not demonstrated the extraordinary circumstances required for relief.  He has not alleged any facts to support his allegation that the government engaged in misconduct during the § 2255 proceeding.

For these reasons, the Court determines that Mr. Lee is not entitled to relief under Rule 60(b)(6).

### 4.     Rule 60(d)(1)

Mr. Lee next argues that he is entitled to relief pursuant to Rule 60(d)(1) based on the government's alleged misconduct and what he claims is a pattern of *Brady* violations.  That Rule provides that a court retains the power to "entertain an independent action to relieve a party from a judgment, order, or proceeding."  Fed. R. Civ. P. 60(d)(1).  Such relief sounds in equity and is "available only to prevent a grave miscarriage of justice."  *United States v. Beggerly*, 524 U.S. 38, 47 (1998).  A party may obtain relief through an independent action if a judgment against the party

was obtained fraudulently with forged evidence, but not if there was merely "a failure to furnish relevant information that would at best form the basis for a Rule 60(b)(3) motion." *Id.* at 46.  The parties dispute whether a demonstration of actual innocence is required and whether, under these circumstances, Mr. Lee's allegations are even cognizable under Rule 60(b)(3).  Regardless of whether a demonstration of actual innocence is required or Mr. Lee's allegations are cognizable under Rule 60(b)(3), the Court determines that Mr. Lee has not alleged or presented evidence sufficient to support his argument that the government has engaged in a "pattern" of misconduct and continues to do so based on this Court's review of Mr. Lee's filings and the record in this case.

For these reasons, the Court determines that Mr. Lee is not entitled to relief under Rule 60(d)(1).

### 5.      Rule 60(d)(3)

Mr. Lee also seeks relief pursuant to Rule 60(d)(3) because he maintains that the government's misrepresentation amounted to "fraud on the court."  Judge Holmes found Mr. Lee's prior allegations of misrepresentation did not amount to fraud on the court based on controlling precedent:

> Fraud on the court is narrowly defined as "fraud which is directed to the judicial machinery itself and is not fraud between the parties or fraudulent documents, false statements or perjury." *Superior Seafoods, Inc. v. Tyson Foods, Inc.*, 620 F.3d 873, 878 (8th Cir. 2010) (quoting *United States v. Smiley*, 553 F.3d 1137, 1144–45 (8th Cir. 2009) (quotations omitted)).  "A finding of fraud on the court is justified only by the most egregious misconduct directed to the court itself, such as bribery of a judge or jury or fabrication of evidence by counsel." *Greiner v. City of Champlin*, 152 F.3d 787, 789 (8th Cir. 1989).  Lee's allegations do not clear this high bar. *See Tyler v. Purkett*, 413 F.3d 696,  700–01 (8th Cir. 2005) ("Claims that a party did not disclose to a court certain facts allegedly pertinent to the matter before it, however, do not normally constitute fraud on the court.").

(Dkt. No. 1313, at 19-20).

In his reply, Mr. Lee argues that Judge Holmes's Order is not the law of the case because, in that proceeding, neither the government's representations during Mr. Chevie Kehoe's § 2255 case nor the alleged pattern of misconduct were at issue. Whether controlled by law of the case or not, Mr. Lee has not sufficiently alleged or demonstrated fraud on the court in his § 2255 proceeding based on this Court's review of Mr. Lee's filings and the record in this case.

For these reasons, the Court determines that Mr. Lee is not entitled to relief under Rule 60(d)(3).

### III.     Conclusion

Mr. Lee's claims in his present motion constitute a successive habeas petition under 28 U.S.C. § 2255 for which Eighth Circuit authorization is required. Mr. Lee is not entitled to relief under Federal Rule of Civil Procedure 60. Therefore, Mr. Lee's motion is denied without prejudice. No certificate of appealability will be issued.

It is so ordered this 2nd day of July, 2020.

_____
Kristine G. Baker
United States District Judge