**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**CENTRAL DIVISION**

**CAPITAL CASE**

**UNITED STATES OF AMERICA**                                          **PLAINTIFF**

**v.**                              **Case No. 4:97-cr-00243-LPR-2**

**DANIEL LEWIS LEE**                                          **DEFENDANT**

### ORDER

Mr. Lee is a federal death-row inmate.  The Director of the Federal Bureau of Prisons ("BOP"), upon direction of the Attorney General, has scheduled Mr. Lee's execution for Monday, July 13, 2020.  (Doc. 1379).  As one would expect, Mr. Lee has recently filed several motions in this Court that either directly or indirectly seek relief from the presently scheduled execution. Today the Court addresses two of those motions.  The first is a Motion to Declare the Bureau of Prisons' Notice Scheduling Daniel Lee's Execution Null and Void.  (Doc. 1400).  The second is a Motion to Set or Modify the Execution Date in Light of the Covid-19 Pandemic.  (Doc. 1401).  In a nutshell, Mr. Lee is arguing that (1) the Director of the BOP lacks the authority to set an execution date because the Court did not expressly provide that authority in a Judgment and Order, and (2) even if the Director of the BOP had such authority, the Court should use its own authority to set a new date.

The Motions were filed on July 1, 2020 and July 2, 2020, respectively.  On July 6, 2020, Judge Baker recused from this case, and it was randomly reassigned to me.  (Docs. 1410, 1411).[1]

---

[1]  I have spent this week both getting up to speed on the entire case file (over 1400 docket entries) and evaluating the pending emergency motions.  With respect to the Motions being decided today, I have closely and carefully studied and weighed each of the party's arguments and sub-arguments, all cited authorities (caselaw, statutes, regulations,

Pursuant to my Order on that same day, the Government filed a Consolidated Response on July 7, 2020, and Mr. Lee filed Replies on July 8, 2020. (Docs. 1412, 1413, 1415, 1416). Later on July 8, 2020, I asked for simultaneous supplemental briefing, which was submitted by the Parties on July 9, 2020. (Docs. 1417, 1421, 1422, 1423, 1424).

The background of this case, including the heinous crimes of which Mr. Lee was convicted and the voluminous procedural history, have been recounted numerous times by both the trial court and the Eighth Circuit.[2] I do not see the need to rehash the same ground. Rather, I confine the background section to what is directly relevant to the resolution of the two Motions described above.

## BACKGROUND

On May 14, 1999, the jury returned a verdict of death with respect to Mr. Lee. *United States v. Lee*, 274 F.3d 485, 491 (8th Cir. 2001). Shortly thereafter, Mr. Lee moved to set aside the death verdict and for a new penalty hearing. *Id.* This motion took some time to resolve and included a mandamus petition to the Eighth Circuit regarding subpoenas issued in furtherance of the motion. *Id.* Ultimately, on March 21, 2000, the District Court ordered a new penalty phase trial. *Id.* (citing *United States v. Lee,* 89 F. Supp. 2d 1017, 1042 (E.D. Ark. 2000)).[3] However, on appeal, the Eighth Circuit concluded that ordering a new penalty phase trial was an abuse of discretion. *Id.* at 497. The Eighth Circuit thus held that "the order of the District Court . . . is reversed and the

---

Attorney General Opinions, etc.), and all supporting exhibits and declarations. Only the press of time has prevented me from writing in a more detailed manner on these Motions.

[2] *See, e.g.*, *United States v. Lee*, 374 F.3d 637, 641-43 (8th Cir. 2004); *United States v. Lee*, No. 4:97-CR-00243-(2) GTE, 2008 WL 4079315, at *2-7 (E.D. Ark. Aug. 28, 2008); *see also United States v. Lee*, No. 4:97-CR-00243-02 KGB, 2020 WL 3625732, at *2-6 (E.D. Ark. July 2, 2020).

[3] The guilt-phase and penalty-phase were presided over by Judge Eisele. Although not particularly relevant here, Judge Eisele also addressed several post-conviction petitions/motions by Mr. Lee. Upon Judge Eisele's retirement, the case was transferred to Judge Holmes and then later to Judge Baker. (Docs. 1212, 1326).

sentence of death is reinstated." *Id.* That opinion was filed in December of 2001, and rehearing was denied in February of 2002.

In March of 2002, after the case returned to this Court, the Court set a sentencing hearing. (Doc. 992). It also entertained but ultimately denied a second motion for a new trial. (Doc. 995). At the sentencing hearing, which took place on May 13, 2002, the Court imposed the sentence as follows:

> Mr. Lee, then pursuant to the verdicts and the findings of the jury entered on May 4, 1999, and May 14, 1999, that I have described in accordance with the decision of the Eighth Circuit Court of Appeals, you are adjudged guilty of the five counts in the indictment against you. And pursuant to the Federal Death Penalty Act of 1994, the verdicts and the special findings of the jury that I referred to and the jury's unanimous vote recommending that you be sentenced to death on Counts 3, 4, and 5, it is the judgment of the Court that you be and you are hereby sentenced to death on each of those counts separately. And pursuant to the sentencing guidelines and the law, it is the further judgment of the Court that you be sentenced to life imprisonment on each of Counts 1 and 2 of the indictment.
>
> In accordance with the provisions of 18 United States Code Section 3596, it is ordered that you be committed to the custody of the Attorney General of the United States until the exhaustion of the procedures for appeal of the judgment of conviction and review of the sentence. If the judgments and sentence of the Court are not challenged or if they are upheld, the execution of said sentences will be carried out in accordance with law. I note once again 18 U.S.C. Section 3596. . . .

(Doc. 1003 at 14-15). The Court then "remanded" Mr. Lee "to the custody of the Attorney General through his authorized representative, the U.S. Marshal's Service." (*Id.* at 16). On the same day, the Court entered a written Judgment. (Doc. 996). In pertinent part, the Judgment states that "[t]he defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a total term of DEATH on each of Counts 3s, 4s, and 5s; and LIFE on Counts 1s and 2s to run concurrent with each other." (*Id.* at 2). The Judgment also states that "[t]he defendant is remanded to the custody of the United States Marshal." (*Id.*).

Fast forward—slowly—17 years.  In the interim, the Eighth Circuit affirmed Mr. Lee's conviction and death sentence on direct appeal.  *United States v. Lee*, 374 F.3d 637, 654 (8th Cir. 2004).  The Supreme Court denied certiorari.  *Lee v. United States*, 545 U.S. 1141 (2005).  And Mr. Lee was unsuccessful on a slew of habeas petitions and Rule 59 and 60 motions.[4]  On July 25, 2019, "the Attorney General . . . directed the Acting Director of the BOP . . . to schedule the executions of five death-row inmates," including Mr. Lee.[5]  "Upon the Attorney General's direction" and "in accordance with 28 C.F.R. Part 26," "Acting Director Hurwitz . . . scheduled executions" for the five death-row inmates.[6]  According to the Department of Justice, "[e]ach of these inmates [had at that time] exhausted their appellate and post-conviction remedies, and [at that time] no legal impediments prevent[ed] their execution . . . ."[7]  Mr. Lee's execution was set for December 9, 2019.[8]  The setting of an execution date surprised Mr. Lee because he "was already in the midst of litigation in the Eighth Circuit on another issue that had yet to be resolved" and because "DOJ had been, for more than ten years, engaged in a lawsuit in a district court in the District of Columbia brought by several men . . . challenging the lethal injection protocol."  (Doc. 1353 at 6, citing *United States v. Daniel Lee*, No. 19-2432 and *Roane v. Barr*, Civ. No. 05-2337, (D. D.C. July 25, 2019)).

As the December 2019 execution date approached, Mr. Lee filed lawsuits and stay motions in several courts across the country, including this Court.  (Doc. 1356 at 1).  It appears that Mr.

---

[4]  *See, e.g.*, Docs. 1118, 1163, 1165, 1189, 1124, 1230, 1249, 1291.

[5]  Press Release No. 19-807, Attorney General William P. Barr Directs the Federal Bureau of Prisons to Adopt an Addendum to the Federal Execution Protocol and Schedule the Executions of Five Death-Row Inmates Convicted of Murdering Children (July 25, 2019) (on file with the Department of Justice, Office of Public Affairs).

[6]  *Id.*

[7]  *Id.*

[8]  *Id.*

Lee did not make the argument in any of those lawsuits or motions that he makes now—namely, that the BOP Director's scheduling of an execution pursuant to the direction of the Attorney General is an *ultra vires* action (and thus null and void) unless the sentencing court has issued a Judgment and Order either setting an execution date or directing the BOP to set an execution date.[9] Everyone—including Mr. Lee's counsel, Government counsel, and multiple judges at multiple levels of the federal judiciary—appeared to work from the premise that there was an active execution date that, absent a stay, would occur in December of 2019. *See* (Docs. 1354, 1355, 1356, 1375).[10] No one involved—including the judges—even hinted that the BOP's setting of an execution date might be an *ultra vires* action and thus null and void from the start.

Mr. Lee's December 2019 execution was stayed by several courts for various reasons. (Doc. 1356). Ultimately, all of those stays were vacated. (Doc. 1375). Shortly after the last stay was vacated, on Monday, June 15, 2020, the Government filed a notice in this Court stating as follows: "The United States hereby notifies the Court that the Director of the Federal Bureau of Prisons, upon the direction of the Attorney General, has scheduled the execution of Daniel Lewis Lee, in accordance with 28 C.F.R. Part 26, to take place on July 13, 2020." (Doc. 1379). On the same day, the Warden of the Terre Haute Complex sent a letter to Mr. Lee. (Doc. 1400-3 at 2).

The letter explained to Mr. Lee that "a date has been set for the implementation of your death sentence, pursuant to the Judgment and Order issued on May 13, 2002, by Judge G. Thomas Eisele of the United States District Court for the Eastern District of Arkansas." (*Id.*). The letter also noted that it would "serve as official notification that pursuant to Tile 28, Code of Federal Regulations, Section 26.3(a)(1), the Director of the Federal Bureau of Prisons has set July 13,

---

[9] Indeed, Mr. Lee has not pointed the Court to anything suggesting that Mr. Lee raised this concern to anyone—including the Government—prior to July 1 of 2020, just twelve days before his currently scheduled execution.

[10] *See also In re Fed. Bureau of Prisons' Execution Protocol Cases*, 955 F.3d 106, 111 (D.C. Cir. 2020).

2020, as the date for your execution by lethal injection." (*Id.*).  The letter was copied to, among others, Judge Baker (who was still the presiding "sentencing" judge at that point), the Clerk of our Court, the U.S. Attorney for our federal district, Mr. Lee's lawyer, the U.S. Marshal for the Southern District of Indiana (where the Terre Haute Complex is located), and the U.S. Attorney for the Southern District of Indiana.  (*Id.*).

## ARGUMENT

The essence of Mr. Lee's argument is as follows: "The power to implement a death sentence vests solely in the courts.  This Court's judgment can be implemented by the Department of Justice (DOJ) . . . only upon a specific delegation of authority to do so.  That delegation can occur in two ways: by Congressional action or by order of this Court.  Neither has occurred here." (Doc. 1400 at 1).  In other words, Mr. Lee's argument is that no one in the Executive Branch— from the President to the Attorney General to the appropriate U.S. Marshal to the Director of the BOP—has the authority to carry out a lawfully imposed death sentence unless he or she is expressly given that authority by one of the other branches of the federal government.  And here Mr. Lee believes that the authority was not expressly provided by the Court or Congress.  (*Id.*).

There are at least two problems with this argument.  *First*, it is not clear that the power to *implement* a sentence—as opposed to the power to *impose* a sentence—"vests solely in the Courts."  Nothing in the Constitution says so expressly.  There is no slam-dunk argument that the founding generation would have understood the *implementation* of a sentence to be of an entirely judicial nature.  For one thing, "at common law the sentence of death was generally silent as to the precise day of execution."  *Holden v. State of Minnesota*, 137 U.S. 483, 496 (1890) (collecting cases).  For another, as both parties acknowledge, until 1830 courts were all over the place as to whether they would set execution dates themselves or leave it to the Executive Branch to set the

date and otherwise implement the sentence.  Sometimes the Court set execution dates.  Sometimes

the President did.  *See, e.g.*, William Wirt, Death-Warrants, 1 Op. Att'y Gen. 228 (1789-1825);

Caleb Cushing, Pardoning Power, 7 Op. Att'y Gen. 561 (1856).

Moreover, one of Mr. Lee's concessions makes his argument even less tenable.  Mr. Lee

is very clear that Congress is entitled to choose which branch may set the date of the execution.

(Doc. 1400 at 1, 6 n.6); (Doc. 1415 at 3-4).  If that is correct, then setting the date of execution

cannot be a strictly judicial role, constitutionally speaking.  If the setting of the date of the

execution was a strictly judicial activity, then Congress would violate the separation of powers

principle enshrined in the Constitution by trying to give that role to the Executive Branch.  While

it is not beyond reasonable dispute, the better view is that the original understanding during the

founding era was that the Executive Branch had the inherent authority to implement a sentence, at

least where the Court and Congress were silent on matters of implementation.

*Second*, Mr. Lee concedes that a Court can give its authority to implement an execution to

DOJ.[11]  (Doc. 1400 at 6).  The Court did so in May 2002, when it imposed a sentence of death in

this case.  (Doc. 996).  As noted above, the Court also orally stated:

> In accordance with the provisions of 18 United States Code Section
> 3596, it is ordered that you be committed to the custody of the
> Attorney General of the United States until the exhaustion of the
> procedures for appeal of the judgment of conviction and review of
> the sentence.  If the judgments and sentence of the Court are not
> challenged or if they are upheld, the execution of said sentences will
> be carried out in accordance with law.

(Doc. 1003 at 15).  Section 3596, among other things, directs the Marshal to "supervise

implementation of the sentence . . . ."  18 U.S.C. § 3596(a).  Moreover, the written Judgment stated

---

[11] Mr. Lee makes much of the difference between the Attorney General, the U.S. Marshals, and the Director of the
BOP.  But duties, responsibilities, and powers of any of these persons can be taken by the Attorney General and
delegated to anyone else in DOJ.  *See* 28 U.S.C. §§ 509, 510.  Mr. Lee's argument that these people and entities
must be treated separately (and not as part of DOJ or the Executive Branch) is unconvincing.

that "[t]he defendant is hereby committed to the custody of the United States Bureau of Prisons to be imprisoned for a total term of DEATH on each of Counts 3s, 4s, and 5s."  (Doc. 996 at 2).  All of this put together gave DOJ the authority to implement the execution after all appeals and reviews were exhausted.

Mr. Lee disagrees.  He cites 28 C.F.R. § 26.2, which is a DOJ regulation instructing government attorneys on the type of Proposed Judgment and Order that they should file after a jury returns a death verdict.  (Doc. 1400 at 2); *see also* 28 C.F.R. § 26.1 ("The regulations of this part apply whenever a sentencing hearing conducted in a United States District Court has resulted in a recommendation or determination that a criminal defendant be sentenced to death for commission of an offense described in any federal statute."); 28 C.F.R. § 26.2 ("Whenever this part becomes applicable, the attorney for the government shall promptly file with the sentencing court a proposed Judgment and Order. . . .").  Mr. Lee's position appears to be that the only way the Court may properly delegate its authority to implement a death sentence is by adopting the content of 28 C.F.R. § 26.2 in an order.  But that is a misunderstanding of the role and import of the regulation.  The regulation controls DOJ attorneys, not the Court.  Issuing a Judgment and Order that incorporates the content of 28 C.F.R. § 26.2 certainly strikes this Court as a best practice.  But that does not mean the "magic words" of the Proposed Judgment and Order in the DOJ regulations are absolutely required for a Court to give DOJ the power to implement a lawfully imposed death sentence.  The May 2002 oral and written imposition of the sentence was enough.  (Docs. 996 , 1003).

Given the foregoing, DOJ's actions implementing the lawfully imposed death sentence— including its June 15, 2020 setting of and notice of a July 13, 2020 execution date—were not *ultra vires*.  Accordingly, I will not declare those actions null and void.

I believe this Court long ago thought it was giving authority to DOJ to carry out the death sentence, including selecting a date for the execution.  And I believe that when DOJ first set an execution date, back in 2019, everyone involved (both parties and judges) thought DOJ had the authority to do so.  The only other read is that Mr. Lee (or his lawyers) believed DOJ was acting *ultra vires* then, but intentionally sat on the argument to make the claim at a more tactically advantageous time.  Either way, I have the authority to make plain what I believe was intended all along.  Accordingly, I am simultaneously filing an Order that more or less tracks the language in 28 C.F.R. § 26.2.  Again, this Order confirms what I believe to have been the case all along—that DOJ had and has the authority to implement Mr. Lee's death sentence on July 13, 2020.

Mr. Lee concedes that I have the authority to issue such an order.  (Doc. 1421 at 1-2); (Doc. 1423 at 3).  He asks that I consider entering the Order for a different execution day, much further in the future.  (Doc. 1401); (Doc. 1421 at 3-5); (Doc. 1423 at 3).  He asks that I do so for numerous reasons, including (1) the Covid-19 crisis and its effect on a plethora of issues surrounding the execution and also the effectiveness of counsel, (2) the continued pendency of litigation, and (3) so that he has sufficient notice required under 28 C.F.R. § 26.4.  (Doc. 1401); (Doc. 1421 at 3-5); (Doc. 1423 at 3).  The Government argues that I do not have the authority to change the date of the scheduled execution.  (Doc. 1413 at 13-14, 20-26).  I'm not so sure about that, but for the reasons discussed below I do not need to determine whether the Government is correct.  After closely reviewing **all of the voluminous filings** and arguments from Mr. Lee and from the Government, I conclude that no more delay is warranted.  The Government's interest in finality and the unique circumstances of how this issue arises in this case counsel in favor of the July 13 date.

I am very sympathetic to the concerns regarding the Covid-19 crisis and all the possible effects it could have on this situation.  However, I do not believe we can predict with any certainty when the Covid-19 crisis will subside.  Whether the need for finality outweighs the mitigated but real Covid-19 related concerns is a judgment I prefer to leave to the elected branches of government.  Congress has not suspended executions during this crisis.  The Executive Branch believes it is worth moving ahead.  I am not in good conscience going to substitute my weighing of the advantages and disadvantages for theirs—especially when a delay would have to be a long one to do any good.

I understand Mr. Lee's Covid-19 concerns centering on the effectiveness of his counsel.  I will note that the concerns about effectiveness of counsel are of course litigable and my Order does not and could not preclude Mr. Lee seeking a stay on those grounds if he thinks they are meritorious.  I will also note that, by my lights, Mr. Lee is getting very good representation and that his lawyers in this case are (appropriately) filing major motions and other papers, which appear to be well argued, well cited, and top-notch.

With respect to the continued pendency of litigation, that factor does not move me a great deal.  Mr. Lee has been in litigation for the better part of the last 17 years.  There will always be more litigation to file.  At some point, the execution must come—at least if the death penalty is to actually provide any of the penal benefits its proponents think it does.  And, of course, if the litigation he is pursuing has merit, Mr. Lee should seek a stay in the appropriate court.

With respect to notice under 28 C.F.R. § 26.4, that notice has already been provided by the Warden.  (Doc. 1400-3 at 2).  Mr. Lee was notified on June 15, 2020 that his execution was scheduled for July 13, 2020.  (*Id.*).  Mr. Lee's arguments that this notification should be treated as a nullity are wrong, as discussed above.  Moreover, the 20-day window is not a hard and fast

requirement; rather the regulation itself notes that 20 days are not necessary if "a court orders otherwise."  28 C.F.R. § 26.4.[12]

For the foregoing reasons, Motions 1400 and 1401 are DENIED.  An Order modeled on the language in 28 C.F.R. § 26.2 will be filed forthwith.

IT IS SO ORDERED this 10th day of July 2020.

LEE P. RUDOFSKY
UNITED STATES DISTRICT JUDGE

---

[12] Once again, I have closely and carefully studied and weighed each of the party's arguments and sub-arguments.  To the extent I do not explicitly identify an argument or sub-argument concerning the appropriate date for execution, I have nonetheless factored those contentions into my decision.  This Order disposes of all issues advanced in Mr. Lee's 1400 and 1401 Motions.